FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 17, 2023

SEAN F. McAVOY, CLERK

1

2

3

4

5            UNITED STATES DISTRICT COURT

6            EASTERN DISTRICT OF WASHINGTON

7  UNITED STATES OF AMERICA,              No. 1:16-CR-02058-SMJ-1

8                Plaintiff/Respondent,    ORDER DENYING 28 U.S.C. § 2255
                                          AND 18 U.S.C. § 3582(c)(1)(A)
9  vs.                                    MOTIONS

10 DARRYL WILLIAM YOUNG,                  **ECF Nos. 167, 168, 182, 196, 198**

11                Defendant/Petitioner.

12        Before the Court are Petitioner Darryl William Young's *pro se* Motion to

13 Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, ECF No. 167, and

14 Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A), ECF No. 182.  For

15 the below reasons, the Court finds that these motions are appropriate for decision

16 without a hearing and denies all motions.

17                        **BACKGROUND**

18 **A. Procedural History through Guilty Plea and Sentencing**

19        On July 12, 2016, Petitioner was charged by Complaint with one count of

20 bank robbery.  ECF No. 1.  Petitioner was indicted on the same count on August 9,

2016.  ECF No. 4.  On October 11, 2017, the United States filed a Superseding Information charging Petitioner with three counts of bank robbery using a dangerous weapon (Counts 1, 2, and 5) and two counts of bank robbery (Counts 3 and 4).  ECF No. 58.  The Superseding Information indicated that Counts 1 through 4 occurred within the Western District of Washington; only Count 5 occurred in the Eastern District of Washington.  ECF No. 58.  On the same day that the information was filed, Petitioner waived indictment, consented to prosecution on the Superseding Information, and pleaded guilty to all five counts.  ECF Nos. 59-61.  In the Plea Agreement, Petitioner admitted to robbing five banks in Seattle, Issaquah, Woodinville, and Selah between June 8 and July 11, 2016.  ECF No. 60 at 5-7 ¶ 6.  He admitted that he brandished a pistol replica during the bank robberies in Counts 1 and 2 and informed the bank teller that he was armed in the bank robbery in Count 5.  ECF No. 60 at 5-7 ¶ 6.

As part of the Plea Agreement, Petitioner waived his right to be tried for Counts 1 through 4 in the Western District of Washington—the District in which these crimes had been committed.  ECF No. 60 at 3 ¶ 4, 7 ¶ 8.  The United States agreed to recommend a 135-month sentence, and Petitioner agreed to recommend a 71-month sentence.  ECF No. 60 at 9 ¶ 10.  The Plea Agreement expressly stated that "the Court is under no obligation to accept any recommendations made by" either party and "may, in its discretion, impose any sentence it deems appropriate"

within the statutory maximum sentences listed in the Plea Agreement.  ECF No. 60 at 2-3 ¶ 3.  The Plea Agreement also stated that these statutory maximum sentences were 25 years for Counts 1, 2, and 5 and 20 years for Counts 3 and 4.  ECF No. 60 at 2 ¶ 2.  Finally, Petitioner also waived his right to file any post-conviction motion challenging his conviction or sentence, except for a 28 U.S.C. § 2255 motion based on ineffective assistance of counsel.  ECF No. 60 at 10-11 ¶ 16.

Petitioner's guidelines range, for a total offense level of 26 and a criminal history category of III, was 78 to 97 months.  ECF No. 102 at 15.  In Petitioner's sentencing memorandum, he requested a sentence of 97 months' imprisonment, which he argued "meets the goals of sentencing."  ECF No. 66 at 5.  He stated that his robberies were motivated by growing economic desperation, and he denied having any intent to hurt anyone.  ECF No. 66 at 6-8.  He admitted that he decided "to rob a bank knowing his actions would result in his incarceration."  ECF No. 66 at 7.  The United States orally recommended a 135-month sentence at the hearing.  ECF No. 102 at 2.

District Judge Mendoza sentenced Petitioner to a total of 180 months of imprisonment, 5 years of supervised release, and $14,346.87 in restitution for Counts 1 through 5.  ECF No. 82.  The court cited the 18 U.S.C. § 3553(a) factors in support of its upward variance—the nature and circumstances of Petitioner's offenses, particularly the impact on victims; Petitioner's history and

characteristics; the need to avoid unwarranted sentence disparities; the need to

provide restitution to victims of the offense; the need to promote respect for the

law and provide just punishment in light of the seriousness of the offense; and the

need to protect the public.  ECF No. 102 at 15-19.

**B. Procedural History Following Sentencing**

Petitioner filed a *pro se* Notice of Appeal to the Ninth Circuit on February

20, 2018.[1]  ECF No. 86.  The Ninth Circuit granted Petitioner's trial counsel leave

to withdraw, and Petitioner was appointed new counsel for his appeal.  ECF Nos.

95, 97.  Petitioner raised three issues in his direct appeal: (1) whether his waiver of

rights in the Plea Agreement barred appellate review of his request to vacate his

guilty plea; (2) whether the Eastern District of Washington had jurisdiction to

accept his guilty pleas to the counts that occurred in the Western District of

---

[1] Three days later, Petitioner filed additional *pro se* motions with the district court,

ECF Nos. 91-94, which the court denied for lack of jurisdiction pending direct

appeal.  ECF Nos. 96.  On July 17, 2018, Petitioner filed a *pro se* Motion to

Withdraw Plea of Guilty in the district court, claiming that the court's plea

colloquy had insufficiently addressed Petitioner's waivers of direct appeal and

collateral attack rights.  ECF No. 104 at 4-5.  The court denied this motion under

Federal Rule of Criminal Procedure 11(e).  ECF No. 106.

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 4

Washington; and (3) whether the plea colloquy sufficiently complied with Federal

Rule of Criminal Procedure 11.  Appellant's Opening Brief at 6, No. 18-30039 (9th

Cir. Sept. 10, 2018), ECF No. 22.  On June 6, 2019, the Ninth Circuit dismissed

the appeal, noting that Petitioner expressly waived his rights to appeal and to a

different venue in his plea agreement and colloquy and had not shown plain error

in the plea colloquy.  ECF No. 117.  Petitioner's petition for panel rehearing or

rehearing en banc was denied on September 4, 2019, ECF No. 122, and his petition

for a writ of certiorari was denied on February 24, 2020.  ECF No. 126.

In July 2020, Petitioner's trial counsel was reappointed and filed a Motion to

Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).[2]  ECF Nos. 131, 135.  In

that motion, Petitioner argued that his heightened risk of serious illness or death

from COVID-19, due to his heart conditions, hypertension, Hepatitis C, liver

disease, and age, was an extraordinary and compelling reason sufficient for relief

under 18 U.S.C. § 3582(c)(1)(A)(i).  ECF No. 135 at 21-24.  The court denied this

---

[2] Section 3582(c)(1)(A) motions are commonly styled as "compassionate release"

motions, although the part of the statute relevant to Petitioner actually authorizes

the Court to "reduce the term of imprisonment" and "impose a term of probation or

supervised release" if extraordinary and compelling reasons so warrant.  18 U.S.C.

§ 3582(c)(1)(A).

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 5

motion, acknowledging Petitioner's high risk of complications were he to contract COVID-19 but ultimately finding that the sentencing factors weighed against Petitioner's requested relief.  ECF No. 147 at 8.  Petitioner also appealed this decision, and the Ninth Circuit affirmed on June 25, 2021.  ECF Nos. 150, 171.

Petitioner filed the instant Section 2255 motion, along with a motion for appointment of counsel, on March 2, 2021.[3]  ECF Nos. 167, 168.  The United States opposes his Section 2255 motion.  ECF No. 174.

Petitioner filed the instant Section 3582(c)(1)(A) motion on January 14, 2022.  ECF No. 182.  The United States also opposes this motion.  ECF No. 184.  In April 2022, Petitioner requested and received a continuance on the Section 3582(c)(1)(A) motion to allow him to provide updated medical information.  ECF Nos. 186, 187.  The court received Petitioner's supplemental briefing on May 23,

---

[3] As an aside, Petitioner has filed several petitions under 28 U.S.C. § 2241 in the District of Oregon for claims relating to his conditions of confinement, including some that overlap with his instant claims.  *See Young v. Salazar*, No. 20-cv-1177 (D. Or. filed July 17, 2020, consolidated with No. 20-cv-712, closed Nov. 15, 2022); *Young v. Hendrix*, No. 21-cv-915 (D. Or. filed June 17, 2021, closed June 3, 2022); *Young v. Hendrix*, No. 21-cv-1323 (D. Or. filed Sept. 7, 2021, closed May 10, 2022); *Young v. Hendrix*, No. 22-cv-1100 (D. Or. filed July 27, 2022).

2022.  ECF No. 188.  In June 2022, Petitioner requested and received a stay of the court's decision to allow him to submit further supplemental briefing.  ECF Nos. 189, 192.  The court received Petitioner's supplemental briefings on June 29, 2022, and July 21, 2022.  ECF Nos. 193, 194.  On September 19, 2022, the matter was reassigned to the undersigned judicial officer.  ECF No. 195.  On November 7, 2022, Petitioner filed another supplement to his Section 3582(c)(1)(A) motion and requested that counsel be appointed to explore "resolution" of his pending motions.  ECF No. 196.  Petitioner provided no updated medical information in any of these supplemental filings.  *See* ECF Nos. 186, 188, 189, 193, 194, 196.

## DISCUSSION

### A. 28 U.S.C. § 2255 Motion

#### *1. Summary of Parties' Arguments*

Petitioner asserts seven grounds in support of his Section 2255 motion.  ECF No. 167.  First, he argues that venue was improper in the Eastern District of Washington for Counts 1 through 4 under Federal Rule of Criminal Procedure 18 and that the failure to transfer those counts to the Western District of Washington violated Federal Rule of Criminal Procedure 20 and his constitutional rights.  ECF No. 167 at 5-13.  Second, he argues that defense counsel provided ineffective assistance by failing to raise this Rule 20 issue with him or with the court before his plea and sentence on Counts 1 through 4.  ECF No. 167 at 14-16.  Third, he

argues that defense counsel provided ineffective assistance in failing to advise him that he might receive a sentence greater than 135 months.  ECF No. 167 at 17-20.  Fourth, he argues that the court failed to address his waivers of the rights to jury trial, direct appeal, and collateral attack and to confirm that these waivers were knowing and voluntary in open court during the plea colloquy, in violation of Federal Rule of Criminal Procedure 11.  ECF No. 167 at 21-27.  Fifth, he argues that the court abused its discretion in sentencing him to 180 months' imprisonment and failing to explain the reasoning for this sentence "enhancement."  ECF No. 167 at 28-30.  Sixth, he argues that the Assistant United States Attorneys for the Eastern and Western Districts of Washington committed prosecutorial misconduct by failing to transfer venue of Counts 1 through 4 from the Western District of Washington according to Federal Rule of Criminal Procedure 20.  ECF No. 167 at 31-33.  Finally, he argues that the Plea Agreement's integration clause was ambiguous and that he would not have accepted a plea that did not foreclose the United States from "recharging" Counts 1 through 4 in the Western District of Washington.  ECF No. 167 at 34-37.

The United States responds in turn to each of Petitioner's seven claims for habeas relief.  ECF No. 174.  On ground one, the United States argues that the Ninth Circuit has already rejected Petitioner's improper venue claim on direct appeal.  ECF No. 174 at 15-16.  Relatedly, the United States argues that grounds

two and six also fail because both are premised on the merits of Petitioner's improper venue claim. ECF No. 174 at 16-17. On ground three, the United States argues that the Plea Agreement and plea colloquy adequately advised Petitioner of the statutory maximum sentences and that the court was not bound by the parties' recommendations, so any failure by defense counsel to advise Petitioner of the possibility of a higher sentence did not prejudice Petitioner. ECF No. 174 at 17-19. On ground four, the United States argues that the Ninth Circuit has already rejected Petitioner's claim that the plea colloquy was deficient and, nevertheless, that the record shows that the colloquy was sufficient. ECF No. 174 at 19-20. On ground five, the United States argues that Petitioner waived his right to challenge his sentence in the Plea Agreement and that the sentencing court adequately explained its reasons for the sentence imposed. ECF No. 174 at 21. Last, the United States argues that Petitioner did confirm his understanding of the integration clause at the plea hearing after further discussion with defense counsel and explanation from the court. ECF No. 174 at 21-22.

    *2. Section 2255 Standard*

    Under Section 2255, a federal prisoner may move to vacate, set aside, or correct their prison sentence on certain grounds. 28 U.S.C. § 2255. To qualify for Section 2255 relief, the movant must demonstrate one of the following four errors: (1) "that the sentence was imposed in violation of the Constitution or laws of the

United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426-27 (1962).  A sentence is "otherwise subject to collateral attack" if it results from a "fundamental defect which inherently results in a complete miscarriage of justice" or a proceeding that is "inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *United States v. Timmreck*, 441 U.S. 780, 783 (1979).  "Errors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under [Section] 2255." *United States v. Wilcox*, 640 F.2d 970, 973 (9th Cir. 1981).

If the movant raises an error for the first time in a Section 2255 petition, the movant "must generally show cause for not raising the error sooner and actual prejudice resulting from the error before a court can consider the claim on the merits." *United States v. Werle*, 35 F.4th 1195, 1199 (9th Cir. 2022) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)).  If, however, the movant first raised the error unsuccessfully on direct appeal, the "law of the case doctrine" generally bars reconsideration of questions decided by a higher court on a prior appeal in the same case. *See United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012).  The doctrine only applies if the issue in question was decided explicitly or by necessary

1   implication in the previous disposition.  *Id.*  "[F]or purposes of the law of the case

2   doctrine[,]" a collateral attack is recognized as the same case as the matter's direct

3   appeal.  *Id.* at 500.  If a district court departs from the law of the case, the court

4   abuses its discretion unless one of five circumstances are present: (1) the first

5   decision was clearly erroneous; (2) an intervening change in the law has occurred;

6   (3) the evidence on remand is substantially different; (4) other changed

7   circumstances exist; or (5) a manifest injustice would otherwise result.  *United*

8   *States v. Scrivner*, 189 F.3d 825, 827 (9th Cir. 1999) (quoting *United States v.*

9   *Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).

10          *3.  Waiver of Right to Collateral Attack*

11          The Court first considers whether Petitioner's claims are barred by the

12   collateral-attack waiver contained in his Plea Agreement.  "As a general rule, a

13   defendant may waive his right to appeal and/or collaterally to attack his plea or

14   sentence[, and s]uch a waiver is enforced if (1) the language of the waiver

15   encompasses the defendant's right to appeal on the grounds raised, and (2) the

16   waiver is knowingly and voluntarily made."  *United States v. Rodriguez*, 49 F.4th

17   1205, 1211-12 (9th Cir. 2022) (internal quotation marks, footnote, and citation

18   omitted).  Indeed, courts will enforce a waiver even if a waived claim is otherwise

19   meritorious "because the whole point of a waiver is the relinquishment of claims

20   regardless of their merit."  *Davies v. Benov*, 856 F.3d 1243, 1248 (9th Cir. 2017)

1   (internal quotation marks and citation omitted).  But "[a] claim that challenges

2   whether the waiver was knowing and voluntary is not waived." *Rodriguez*, 49

3   F.4th at 1212.  "A habeas petitioner bears the burden of establishing that his guilty

4   plea was not voluntary and knowing." *Little v. Crawford*, 449 F.3d 1075, 1080

5   (9th Cir. 2006).

6        The Plea Agreement contained several key waivers of Petitioner's rights: the

7   right to be tried in the District where the offense was committed and, by extension,

8   the right to challenge venue in the Eastern District of Washington; the right to

9   appeal his conviction and sentence; and the right to file any post-conviction motion

10  attacking his conviction and sentence except for a motion asserting ineffective

11  assistance of counsel.  ECF No. 60 at 7 ¶ 8, 10-11 ¶ 16.  At Petitioner's plea

12  hearing, the court expressly confirmed Petitioner's understanding that he was

13  waiving his venue right and "essentially, most of [his] rights to appeal, except for

14  ineffective assistance of counsel."  ECF No. 101 at 13-15.  The court also

15  expressly confirmed Petitioner's understanding that the court did not have to

16  follow either party's recommended sentence:

17      THE COURT: Do you understand that provision No. 9 discusses -- in
        Page 8 discusses your attorney's understanding and the government's
18      understanding of how the sentencing guidelines are going to apply.
        They do, in fact, apply, and they provide their analysis of how they, in
19      fact, apply. I want to make sure you understand that I may have a
        difference of opinion with how I apply the sentencing guidelines, and
20      if I do have that difference of opinion, in fact, if I apply them
        differently, that does not give you a right to withdraw from this guilty

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 12

1    plea. Do you understand that?

2        THE DEFENDANT: Yes, I do.

3    ECF No. 101 at 13-14.

4        Under *Rodriguez*, most of Petitioner's Section 2255 arguments are not

5    affected by waiver. *See* 49 F.4th at 1211-12.  The sole exception is ground five.

6    The language of the Plea Agreement encompasses Petitioner's right to appeal or

7    collaterally attack the length of his sentence.  ECF No. 60 at 10-11 ¶ 16.  The court

8    confirmed his understanding of this waiver during his plea colloquy and found that

9    Petitioner's plea was voluntary.  ECF No. 101 at 13-14, 21.  The Court finds that

10    Petitioner's argument in ground five is precluded by the enforceable waiver of

11    appellate and collateral attack rights in his Plea Agreement and must be dismissed.

12        In contrast, the Plea Agreement and colloquy expressly excluded claims of

13    ineffective assistance of counsel from Petitioner's appeal waivers.  As a result,

14    grounds two and three have not been waived.  Petitioner's first, fourth, sixth, and

15    seventh grounds challenge the knowing and voluntary nature of his plea, as

16    Petitioner argues that he did not knowingly agree to the venue waiver, the waiver

17    of his trial and appeal rights, or the integration clause in the Plea Agreement.

18    Accordingly, these claims have also not been waived. *See Rodriguez*, 49 F.4th at

19    1212.

20

### 4. Venue Claims (Grounds One and Six)

In ground one, Petitioner argues that he is entitled to relief under Section 2255 because Counts 1 through 4 of the Superseding Information were not prosecuted in the district where the underlying offenses were committed, in violation of Federal Rule of Criminal Procedure 18, and were not properly transferred from the Western District of Washington to the Eastern District of Washington under the procedures set forth in Federal Rule of Criminal Procedure 20.  ECF No. 167 at 5-16, 31-33.  Petitioner's sixth ground for relief stems from this claim.[4]  In ground six, he argues that the Assistant United States Attorneys for the Eastern and Western Districts of Washington committed prosecutorial misconduct by failing to transfer venue of Counts 1 through 4 from the Western District of Washington according to Rule 20.  ECF No. 167 at 31-33.

---

[4] Petitioner's second ground for relief also is related to ground one in that he asserts defense counsel provided ineffective assistance by failing to raise this Rule 20 issue with him or with the court.  ECF No. 167 at 14-16.  This will be discussed in Section 5, "Ineffective Assistance of Counsel Claims (Grounds Two and Three)" below.

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 14

The United States argues that ground one has already been rejected by the Ninth Circuit and cannot be re-heard in a Section 2255 motion, and that ground six fails because Rule 20 was inapplicable.  ECF No. 174 at 16.

Federal Rule of Criminal Procedure 18 provides a statutory right to be tried in the district where the alleged offense was committed, unless otherwise permitted by rules or statute.  There is also a constitutional right to be tried in the state and district where the crimes were committed.  *See United States v. Lozoya*, 982 F.3d 648, 651 (9th Cir. 2020) (citing U.S. Const. Art. III § 2, cl. 3; *id.* amend. VI).  But the right to be tried in a certain venue is waivable by express waiver or by inaction.  *See Hanson v. United States*, 285 F.2d 27, 28 (9th Cir. 1960); *United States v. Douglas*, 996 F. Supp. 969, 973-74 (N.D. Cal. 1998) (citing *United States v. Evans*, 62 F.3d 1233, 1236 (9th Cir. 1995)).

As the United States argues, the Ninth Circuit has already found that Petitioner's venue waiver was express and, by implication, valid.  ECF No. 117 at 2.  This Court is therefore bound under the law of the case doctrine unless one of the five exceptions applies.  *See Scrivner*, 189 F.3d at 827.  There have been no intervening changes in the law of venue waivers.  Moreover, there is no evidence before this Court that there are substantial differences in the evidence on remand, changed circumstances relating to the venue waiver, or that a manifest injustice would result from upholding the waiver.  *See id.*  Nor was the first decision by the

Ninth Circuit clearly erroneous.  *See id.*  The record reflects that Petitioner's waiver was expressly, knowingly, and voluntarily made.  The waiver language in the Plea Agreement was unequivocal: "Defendant understands that he has a right to be tried in the District in which the crime allegedly was committed [but] agrees to waive venue as to the crimes charged in the Superseding Information."  ECF No. 60 at 7 ¶ 8.  This included Counts 1 through 4.  ECF No. 58.  The court extensively and expressly discussed this waiver with Petitioner during his plea:

> THE COURT: Okay.  Now – and we'll get to this at a later point.  Four of these counts are stemming from acts that occurred in the Western District of Washington.  Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Only Count 5 pertains to the Eastern District of Washington.  Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you understand that you are pleading guilty to a matter that you could, instead, have taken care of in the Western District?  It is your right, in fact, to do that.  But you're giving up that right by going forward and having that done in this district.  Do you understand that?
>
> THE DEFENDANT: Yes.

ECF No. 101 at 5-6.  The court returned to the matter later in the colloquy:

> THE COURT: [T]he provision in paragraph No. 8 discusses the waiver of venue.  Do you understand that you have a right to be tried in the district where the crime allegedly occurred?  And in this case, four of the counts pertain to the Western District of Washington.  Do you understand that you're waiving that right?

1    THE DEFENDANT: Yes, I do, Your Honor.

2    ECF No. 101 at 13-14.

3    The validity of Petitioner's venue waiver is not affected by Federal Rule of

4    Criminal Procedure 20.  Rule 20 is only applicable if the defendant is "arrested,

5    held or present" in one district, and the indictment or information is pending in

6    another district.  *See* Fed. R. Crim. P. 20.  No indictment or information was

7    pending in the Western District of Washington for conduct relating to Counts 1

8    through 4 at any relevant time, so there was no basis for a Rule 20 transfer.

9    With no basis to depart from the law of the case, the Court finds that

10   Petitioner is not entitled to relief on ground one.

11   Moreover, as to ground six, the United States' failure to seek a Rule 20

12   transfer was not prosecutorial misconduct constituting error.  Governmental

13   conduct to obtain jurisdiction over a defendant may amount to a due process

14   violation if that conduct meets the "extremely high standard" of "shocking and

15   outrageous."  *United States v. Struckman*, 611 F.3d 560, 573 (9th Cir. 2010).  In

16   *Struckman*, the Ninth Circuit found it "quite disturbing" but insufficiently

17   outrageous that federal agents made "flat misstatements" to Panamanian officials

18   to obtain the defendant's expulsion from Panama to the U.S. for prosecution.  *Id.* at

19   573-74.  The appellate court also noted a previous case where the "abduction of a

20   defendant by U.S. Marshals from the defendant's home" was insufficiently

shocking and outrageous.  *Id.* at 574 (citing *United States v. Matta-Ballesteros*, 71 F.3d 754, 761, 763 (9th Cir. 1995)).  In contrast to the conduct in those cases, the United States did nothing improper, much less shocking and outrageous, by failing to seek a Rule 20 transfer.  Petitioner is not entitled to relief on ground six.

### 5. Ineffective Assistance of Counsel Claims (Grounds Two and Three)

Petitioner's second and third grounds allege ineffective assistance of counsel through counsel's alleged failure to recognize and raise a Rule 20 objection and alleged failure to properly advise Petitioner on the maximum sentence he might face following his plea.  ECF No. 167 at 14-20.  The United States responds that Rule 20 is inapplicable, and that Petitioner cannot show prejudice even if counsel had inadequately advised him on the maximum possible sentence.  ECF No. 174 at 16-19.

"To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *United States v. Juliano*, 12 F.4th 937, 940 (9th Cir. 2021) (internal quotation marks omitted) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  When analyzing the first prong, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.  With regard to the second prong, a movant asserting ineffective assistance of counsel at the plea

1  stage must demonstrate that, had counsel not been incompetent, the movant would

2  rationally have rejected the plea bargain and then proceeded to trial or received a

3  better plea bargain instead.  *Rodriguez*, 49 F.4th at 1213.

4      As explained above, there was no basis to raise a Rule 20 objection in

5  Petitioner's case.  Thus, Petitioner is not entitled to relief on ground two, as

6  counsel would not have performed deficiently by failing to raise or advise

7  Petitioner of a meritless claim.  *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th

8  Cir. 2012) ("[C]learly we cannot hold counsel ineffective for failing to raise a

9  claim that is meritless."); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994)

10 ("Counsel's failure to make a futile motion does not constitute ineffective

11 assistance of counsel.") (citation omitted).

12     On ground three, Petitioner argues that neither counsel nor the court advised

13 him that he could receive a sentence above the government's recommendation of

14 135 months and that, had he known that fact, he would have gone to trial on the

15 single-count indictment.  ECF No. 167 at 17-20.  Petitioner provides nothing more

16 than his own allegations that counsel misadvised him.  The Court must presume

17 that counsel acted within reasonable limits.  *See Strickland*, 466 U.S. at 689.

18 Beyond this presumption, Petitioner's arguments are contradicted by his own

19 allegations and the record.

20     Petitioner states that he raised "serious concerns" about certain aspects of the

Plea Agreement in his discussions with counsel, and that they specifically discussed "Clause 3"—i.e., the section concerning the court's discretion to reject the agreement or the parties' sentencing recommendations.  ECF No. 167 at 18.  Petitioner states that, after his discussion with counsel, he understood that the court could impose a sentence between, but not above or below, the parties' recommendations.  ECF No. 167 at 18-19.  But that understanding would have been in direct conflict with the language of Clause 3, which clearly provides that "the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums" stated therein.  ECF No. 60 at 2-3 ¶ 3.

Moreover, the court also confirmed with Petitioner at the plea hearing that he was satisfied with the services he received from counsel, and specifically with counsel's advice on the Plea Agreement:

THE COURT: In fact, are you satisfied with the services that you've received from your attorney?

THE DEFENDANT: Absolutely.

. . .

THE COURT: Okay.  Mr. Young, I have in front of me a plea agreement.  And before you signed this plea agreement, did you have an opportunity to discuss that plea agreement with your attorney?

THE DEFENDANT: Yes, I did.

THE COURT: Did you understand the terms of that plea agreement?

THE DEFENDANT: Yes, I do.

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 20

THE COURT: If you had any questions about that plea agreement, did you have an opportunity to discuss those questions with your attorney?

THE DEFENDANT: Yes, I did.

THE COURT: Were you satisfied with the answers that he was able to provide you?

THE DEFENDANT: Yes, I was.

THE COURT: And do you feel that you're informed about what this plea agreement means?

THE DEFENDANT: Yes, sir, I do.

ECF No. 101 at 7-8.

Additionally, it is suggestive that Petitioner did not raise this claim on direct appeal or the motions he filed in the district and appellate courts at the time of his direct appeal. Ineffective assistance of counsel claims are exempt from the typical rule that claims not raised on direct appeal are considered procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 504 (2003). The Court is not implying that Petitioner *cannot* bring this claim now. But Petitioner's trial counsel specifically moved to withdraw from his direct appeal because counsel believed that the issues Petitioner intended to raise on appeal would "relat[e] to the plea agreement and related matters [which] will necessarily include potential claims of ineffective assistance of counsel." Motion to Withdraw at 2 ¶ 5, No. 18-30039 (9th Cir. Feb. 26, 2018), ECF No. 3. The Ninth Circuit granted leave for trial counsel

to withdraw, and substitute counsel for Petitioner's appeal was appointed the

following day. *See* ECF Nos. 95, 97.  Petitioner did not raise ineffective assistance

of trial counsel in that appeal, nor in his Motion for Rehearing En Banc.  *See* No.

18-30039 (9th Cir. Sept. 10, 2018), ECF Nos. 22, 74.  Nor did he raise it in his *pro*

*se* Motions for Leniency, to Arrest Judgment, to Appoint Counsel, or to Withdraw

Plea of Guilty filed in the district court around the same time.  *See* ECF Nos. 91-

93, 104.  In that Motion for Leniency, Petitioner described his 180-month sentence

as "unduly harsh" rather than in violation of the terms of his Plea Agreement or

contrary to defense counsel's representations.  ECF No. 91 at 1.  In a letter to the

Ninth Circuit, Petitioner mentioned communication problems with his new

appointed attorney and his intent to raise a Federal Rule of Criminal Procedure 11

violation *pro se* on appeal.  Letter at 2, No. 18-30039 (9th Cir. June 25, 2018),

ECF No. 12 ("It appear[s] the rule 11 violation must be raised on direct appeal.

Therefore, I have to brief this rights violation, that should negate my plea.  I have

very little education in matters of law.  However, if I cannot rely on my attorney to

raise violations of my rights, that challenge directly the knowing, understanding,

and voluntary requirements to entering a plea, then I must make the court record

myself.").  Petitioner briefed this Rule 11 claim in his *pro se* Motion to Withdraw

Plea of Guilty, which did not allege any issues with counsel's advice on the

maximum possible sentence.  *See* ECF No. 104.  Had Petitioner actually been

misadvised by his attorney that the court could not sentence him above 135 months, it seems likely that Petitioner would have mentioned this in his direct appeal or numerous *pro se* filings.

Nevertheless, even if Petitioner could demonstrate that counsel inadequately advised him of the maximum possible sentence, he has not established that, but for counsel's errors, there is a reasonable probability that he would have gone to trial. *See Rodriguez*, 49 F.4th at 1213. The record reflects that, at the plea hearing, Petitioner understood the statutory maximum sentences for each of his offenses. Indeed, when asked by the court if he understood that the offenses he faced carried a maximum penalty, Petitioner correctly recalled and recited the statutory maximums to the court:

> THE COURT: And do you understand that with regards to Counts 2 -- 1, and 2, and 5, those are charges of bank robbery using a dangerous weapon. Do you understand that those carry with it a number of consequences, minimum and maximum – excuse me. Maximum consequences. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you remember what the maximum consequence is?
>
> THE DEFENDANT: 25 years, I believe.
>
> THE COURT: And do you understand that Counts 3 and 4 also have maximum consequences for those offenses?
>
> THE DEFENDANT: Yes, I do.

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 23

1    THE COURT: Do you remember how long that was?

2    THE DEFENDANT: 20 years.

3  ECF No. 101 at 8-9.  The court confirmed Petitioner's understanding that he could

4  ask for clarification from the court or counsel at any point during the colloquy.

5  ECF No. 101 at 2-3.  Petitioner confirmed that he had discussed the Superseding

6  Information with counsel, had no further questions, and understood the

7  handwritten changes to that document, which he had signed with his initials.  ECF

8  No. 101 at 4-5; *see* ECF No. 58 at 2-3.

9    Petitioner also confirmed with the court that he had discussed the Plea

10  Agreement with counsel, understood its terms, was satisfied with counsel's

11  answers to his questions about it, and felt he was informed about its meaning.  ECF

12  No. 101 at 8.  Petitioner confirmed his understanding that the court was not a party

13  to the Plea Agreement and, twice, that the court's disagreement with the sentencing

14  recommendations would provide no basis to withdraw his plea:

15    THE COURT: Do you understand that this agreement that you have
       worked out with the government, between you and the government, is
16     an agreement just among those parties?  The court is not a party to this
       agreement.  Do you understand that?

17     THE DEFENDANT: I do, Your Honor.

18     THE COURT: In other words, should I disagree with either the
       recommendation or the calculations that you and your attorney and the
19     government have entered into, that is not a basis for you to withdraw
       from this guilty plea.  Do you understand that?

20

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 24

THE DEFENDANT: Yes.

ECF No. 101 at 10.

> THE COURT: I want to make sure you understand that I may have a difference of opinion with how I apply the sentencing guidelines, and if I do have that difference of opinion, in fact, if I apply them differently, that does not give you a right to withdraw from this guilty plea. Do you understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: The government agrees to recommend a sentence of 135 months, and your attorney is going to recommend a sentence of 71 months. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Neither of which I have to accept. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

ECF No. 101 at 14. The court also confirmed that Petitioner knew he could still decide against pleading guilty at that stage:

> THE COURT: And do you understand that you can change your mind even at this late stage? Today, right now, you could turn to me and say, you know what, Judge Mendoza, I'm not going to plead guilty, I don't want to. You have every right to do that. Do you understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Do you still wish to go forward with this plea?
>
> THE DEFENDANT: Yes, I do.

ECF No. 101 at 10-11.

In sum, Petitioner has not shown enough to overcome the strong

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 25

presumption that counsel performed reasonably—particularly when the record overwhelmingly shows that Petitioner properly understood the Plea Agreement's terms and the matters addressed during the colloquy—and has not established a reasonable probability that he was prejudiced by any unreasonable performance. Accordingly, Petitioner is not entitled to relief on ground three.

### 6. Appeal-Waiver Claim (Ground Four)

On ground four, Petitioner specifically argues that the plea colloquy violated Federal Rule of Criminal Procedure 11(b)(1)(N) by inadequately addressing whether Petitioner understood that he was waiving his rights to direct appeal and collateral attack. ECF No. 167 at 21. This rule requires a court considering a guilty plea to "address the defendant personally in open court [and] inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence[.]" Fed. R. Crim. P. 11(b)(1)(N).

Petitioner asserts that the court made "no mention of [the] waiver of right to appeal and collaterally attack [his] sentence in open court" at the plea hearing and only cursorily mentioned his waiver of appeal rights at the end of the sentencing hearing. ECF No. 167 at 21-22. As the United States argues, the court did, in fact, expressly address the waiver at the plea hearing:

> THE COURT: And do you understand that you have a very limited right to appeal? You give up, essentially, most of your rights to appeal,

except for ineffective assistance of counsel.  Do you understand that?

THE DEFENDANT: Yes.

ECF No. 101 at 15; ECF No. 174 at 20.  The court used language that accurately explained the scope of the waiver without using the exact words "direct appeal" or "collateral attack."  This is enough to satisfy Rule 11(b)(1)(N), particularly in the context of habeas review.  *See, e.g., United States v. Watson*, 582 F.3d 974, 986-87 (9th Cir. 2009) (finding no plain error under Rule 11 where the colloquy advised the defendant, "you're giving up your right to take an appeal" and "you have no appeals" and confirmed the defendant's understanding); *United States v. Herrera-Lopez*, 391 F. App'x 681, at *1 (9th Cir. 2010) (not reported) (finding the colloquy satisfied Rule 11(b)(1)(N) by informing the defendant that he "giving up the majority of his rights to appeal the sentence other than those few that are delineated in the plea agreement" and confirmed the defendant's understanding); *United States v. Wilson*, No. 15-cr-46, 2022 WL 64574, at *10 (E.D. Cal. Jan. 6, 2022) (upholding a habeas movant's appeal waiver based on the court's general colloquy confirming the movant knowingly and voluntarily entered into the plea agreement).

Petitioner similarly alleges that the court failed to address him personally in open court to determine that he was knowingly and voluntarily waiving his right to a jury trial, in violation of Federal Rule of Criminal Procedure 11(b)(1)(C).  ECF

No. 167 at 23-24. This is equally without merit:

> THE COURT: When you plead guilty, you give up a number of important constitutional rights. They include the right to go to trial . . . You give up all of those rights when you plead guilty. Do you understand that?
>
> THE DEFENDANT: Yes.

ECF No. 101 at 10. Before accepting a defendant's guilty plea, Federal Rule of Criminal Procedure Rule 11(b)(1) requires the district court to "inform the defendant of, and determine that the defendant understands," various rights and consequences during a personal address in open court. That includes the right to a jury trial. Fed. R. Crim. P. 11(b)(1)(C). Here, the district judge informed Petitioner of his right "to go to trial" during the plea colloquy, but he omitted the word "jury." ECF No. 101 at 10. Petitioner did not object during the plea colloquy nor raise this issue on direct appeal. Petitioner is not entitled to habeas relief on this ground. *See, e.g., United States v. Ferguson*, 8 F.4th 1143, 1145 (9th Cir. 2021) (reaffirming that "a Rule 11 error doesn't automatically lead to reversal" and "a defendant must continue to show a Rule 11 violation's impact on substantial rights before we will undo a guilty plea"). He has not shown that, but for the error, he would have pleaded differently. *See United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). In fact, in his Petition, Petitioner does not even contend that he would not have entered a guilty plea if the district judge had explicitly told him about the right to a jury trial. *See United States v. Delgado-Ramos*, 635 F.3d 1237,

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 28

1241 (9th Cir. 2011) ("[B]ecause [the defendant] does not assert on appeal that he would not have entered the plea 'but for the [district court's alleged] error,' he has not demonstrated the 'probability of a different result' and thus cannot show that the district court's action affected his 'substantial rights.' " (second alteration in original) (quoting *Dominguez Benitez*, 542 U.S. at 83, 124 S.Ct. 2333)).  The record also contains evidence showing that Petitioner knew he had a right to a jury trial.  He read and signed a plea agreement that informed him that he was giving up "the right to a jury trial", ECF No. 60 at 3 3 ¶ 4(a), and told the court that he understood his plea agreement and did not have any questions about it.  There is no other evidence that Petitioner misunderstood the nature of his trial right or would not have pleaded guilty had the court said "jury trial."  Thus, a court's reference to the right to trial, rather than the right to a jury trial, is not an error affecting substantial rights when there is evidence that the defendant knew he was waiving the right to a jury trial and made no indication that, but for the omission, he would not have pleaded guilty.  *See United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Because [the defendant] knew the reasonable doubt standard applied, he cannot establish 'a reasonable probability that, but for the [Rule 11] error, he would not have entered the guilty plea.' " (second alteration in original) (citation omitted)).  As such, Petitioner is not entitled to relief on ground four.

### 7. Integration Clause Claim (Ground Seven)

Finally, ground seven asserts that Petitioner misunderstood the Plea Agreement's integration clause in relation to whether prosecutors in the Western District of Washington could bring further charges relating to Counts 1 through 4. ECF No. 167 at 34-37.  He asserts that, had he known the Plea Agreement did not preclude such charges, he would not have pleaded guilty.  ECF No. 167 at 34.

Petitioner's argument centers on the following exchange during the colloquy.  *See* ECF No. 167 at 34-36 (quoting sections from ECF No. 101 at 12-13).  When the court summarized the integration clause, Petitioner replied that he was "not clear" on that point.  ECF No. 101 at 12.  He conferred with counsel off the record, then counsel explained that Petitioner's "concern was, are they going to turn around and charge [him] again" for Counts 1 through 4 in the Western District of Washington.  ECF No. 101 at 12.  Counsel for the United States represented his understanding that no such charges would be brought in the Western District.  ECF No. 101 at 13.  The court concluded that "should the Western District decide to change their mind" on that matter, "the court would certainly entertain a motion to withdraw [Petitioner's] guilty plea at that point[.]"[5]  ECF No. 101 at 13.

---

[5] Petitioner does not allege that any such charges have been brought in the Western District of Washington.  *See* ECF No. 167 at 34-37.

Petitioner now argues that the court failed to confirm with him, after this exchange, that he understood this explanation of the integration clause. ECF No. 167 at 36-37. As the United States indicates, this argument is contradicted by the record:

> THE COURT: And as I mentioned earlier, this integration clause paragraph essentially says that this is the entirety of the plea agreement, there are no other side deals that are included in this plea agreement, everything that you understand is included in this document. Is that clear to you?
>
> THE DEFENDANT: Yes, it is.

ECF No. 101 at 15; ECF No. 174 at 21-22. Petitioner is therefore not entitled to relief on ground seven.

### 8. Evidentiary Hearing

As a final matter, the Court finds that no evidentiary hearing is required on this motion. A Section 2255 movant is generally entitled to an evidentiary hearing. *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (citation omitted). However, no evidentiary hearing is warranted if the movant's "allegations, 'when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.'" *Id.* (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). Said differently, the district court is not required to hold an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is not entitled to

relief.  *Id.*  A movant's conclusory statements in a Section 2255 motion are not

enough to require an evidentiary hearing.  *United States v. Hearst*, 638 F.2d 1190,

1194 (9th Cir. 1980) (citing *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir.

1969)).

Here, the current record thoroughly documents the events relevant to

Petitioner's claims and justification for summary dismissal on all grounds.

Grounds one, two, and four through seven are patently frivolous in light of

Petitioner's valid waivers of venue and rights of appeal and collateral attack, and

the discussions on the record about the integration clause.  Petitioner's third ground

involves matters that often require an evidentiary hearing.  *See Rodriguez*, 49 F.4th

at 1213 (noting that evidentiary hearings are "particularly appropriate" in

ineffective assistance of counsel claims, which "raise facts which occurred out of

the courtroom and off the record" and require consideration of "what a defendant

would have done") (internal quotation marks and citations omitted).  But if the

record contains no evidence of deficient performance or resulting prejudice under

the *Strickland* standard, even an ineffective assistance of counsel claim may be

summarily dismissed.  *See id.* at 1214-17 (demonstrating the *Strickland* analysis on

review of a court's denial of evidentiary hearing).  The record contains no evidence

of deficient performance or resulting prejudice relating to ground three.  On the

contrary, the record makes it palpably incredible that counsel performed deficiently

or that Petitioner misunderstood the maximum potential sentence such that he would have not plead guilty and instead proceeded to trial.  For these reasons, the Court finds that Petitioner's Section 2255 motion may be dismissed without evidentiary hearing.

## B.  18 U.S.C. § 3582(c)(1)(A) Motion

### 1.  *Summary of Parties' Arguments*

Petitioner seeks to reduce his sentence to time served or, alternatively, to convert his remaining term of imprisonment and supervised release to a term of home confinement.  ECF No. 182 at 11-14.  Petitioner states that he presents extraordinary and compelling reasons for relief primarily based on his diagnosis of Hurthle cell thyroid cancer and his claims that the U.S. Bureau of Prisons (BOP) is failing to provide "expeditious[]" medical treatment for that cancer.  ECF No. 182 at 7-8.  Petitioner alleges that FCI Sheridan medical staff have approved multiple requests from his physicians for additional appointments, but that these appointments were delayed or cancelled due to a shortage of correctional officers.  ECF No. 194 at 5-6.  Petitioner states that he contracted the Omicron COVID-19 variant in early February 2022 and has since felt residual effects, including fatigue, shortness of breath, circulation problems, and "pressure in the head."  ECF No. 186 at 3; ECF No. 188 at 4.  Petitioner also cites his current medical diagnoses of degenerative heart disease, high blood pressure, hyperlipidemia, congenital pes

planus (in lay terms, flat-foot deformity present from birth), presbyopia

(farsightedness), otitis externa (an infection of the external ear canal),

atherosclerosis (arterial plaques), and Hepatitis C.  ECF No. 188 at 3-4.

Petitioner further asserts that the "[e]xceedingly [h]arsh" conditions at FCI

Sheridan are further reasons to reduce his sentence.  ECF No. 188 at 7.  He calls

the Court's attention to a District of Oregon case in which numerous FCI Sheridan

inmates, including Petitioner, have filed Section 2241 habeas claims relating to

their conditions of confinement.  ECF No. 188 at 9; ECF No. 194 at 3-4.  He states

that FCI Sheridan has remained in some form of lockdown since March 2020,

limiting inmates' access to yard time, visits, and programming.  ECF No. 188 at 7-

8.  He describes one incident from his own experience, after he contracted the

Omicron variant.  ECF No. 188 at 8.  He was quarantined in the prison gym, where

he and other inmates were given rudimentary supplies for personal hygiene and

sleeping but no changes of clothing or access to laundry.  ECF No. 188 at 8.

Petitioner also cites his long-term work in the prison kitchen, his numerous

hours of prison programming, and his participation in mental health treatment.

ECF No. 188 at 10; ECF No. 193 at 2.  He provides records reflecting his

completion of a 4,000-hour apprenticeship program, a 12-hour drug abuse

education course, a 30-hour self-management and recovery training course, and a

16-hour victims impact course.  ECF No. 196 at 8-16.  Petitioner states that he has

already received 365 days' worth of earned time credits under the First Step Act for his programming, which brings his projected release date from April 22, 2029, to April 22, 2028, and he expects to receive another 365 days' worth soon. ECF No. 196 at 3-4.

Finally, Petitioner expresses remorse for how his offenses have impacted the victims and his own family. ECF No. 193 at 2-4. He states that a sentence reduction will allow him to spend the remainder of his life with his family. ECF No. 193 at 4.

In opposition, the United States argues that Petitioner is receiving adequate medical care. ECF No. 184 at 2. The United States notes that Petitioner raised a similar argument in a Section 2241 petition filed in the District of Oregon, received appointed counsel, then filed a *pro se* motion to dismiss the action, although the court denied that motion.[6] ECF No. 184 at 3 (citing *Young v. Hendrix*, No. 21-cv-915 (D. Or. filed June 17, 2021), ECF Nos. 1, 6, 7). The United States argues that Petitioner's medical records to date show that Petitioner has received all follow-up

---

[6] More recently, the court granted a motion to dismiss without prejudice filed by Defendant's appointed counsel, which stated that his "medical issues are being addressed" as of May 31, 2022. No. 21-cv-915 (D. Or. June 2022), ECF Nos. 16-18.

1    appointments for his thyroid concerns and has not received an actual diagnosis of

2    cancer or other terminal illness.  ECF No. 184 at 5, 8-9.

3        *2.  Legal Standard for Section 3582(c)(1)(A) Sentence Reductions*

4        Under 18 U.S.C. § 3582(c)(1)(A), a movant must first exhaust all

5    administrative remedies before moving for a sentence reduction.  This requirement

6    is satisfied if the movant requests that the BOP bring such a motion on the

7    movant's behalf but receives no response to that request after 30 days.  18 U.S.C.

8    § 3582(c)(1)(A).  The Court then determines (1) whether extraordinary and

9    compelling reasons warrant a sentence reduction,[7] (2) whether such a reduction

10   would be consistent with applicable policy statements issued by the Sentencing

11   Commission,[8] and (3) whether the requested sentence reduction is warranted in

12

13   [7] There are two standards for Section 3582(c)(1)(A) relief, but Petitioner neither

14   seeks nor qualifies for relief under the other standard.  *See* ECF No. 182 at 1, 3.

15   That standard requires, in relevant part, that the movant have served at least 30

16   years of a life sentence.  18 U.S.C. § 3582(c)(1)(A)(ii).

17   [8] At present, "the Sentencing Commission has not yet issued a policy statement

18   'applicable' to § 3582(c)(1)(A) motions filed by a defendant" given that U.S.S.G.

19   § 1B1.13 has not been updated since the First Step Act amended Section 3582.

20   *United States v. Aruda*, 993 F.3d 797, 800, 802 (9th Cir. 2021).

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 36

light of the 18 U.S.C. § 3553(a) factors specific to that case. *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022). The Court must find that all three inquiries are satisfied before granting the motion, and failure to satisfy any single inquiry is grounds for denying the motion. *Id.* (citation omitted).

### 3. Administrative Exhaustion

Petitioner submits a copy of his May 16, 2021, letter to the Warden of FCI Sheridan requesting consideration for sentence reduction under Section 3582(c)(1). ECF No. 182 at 15-19. Petitioner states he had received no response from the Warden through the date he drafted his motion. ECF No. 182 at 3. The United States does not dispute administrative exhaustion. *See* ECF No. 184 at 6. Accordingly, the Court finds that Petitioner has fully exhausted all administrative remedies under Section 3582(c)(1)(A).

### 4. The Section 3553(a) Factors

The Court first addresses the sentencing factors of 18 U.S.C. § 3553(a), which were the primary reason for the denial of Petitioner's first Section 3582(c)(1)(A) motion. *See* ECF No. 147 at 6-8. The Court agrees with the previous assessment of the Section 3553(a) factors but adds further information based on the Court's independent review of the record and the new information that Petitioner provides.

In denying Petitioner's first Section 3582(c)(1)(A) motion, the court noted

that the nature and circumstances of Petitioner's offenses were "undoubtedly serious." ECF No. 147 at 6. The court specifically pointed to the frequency of Petitioner's offenses—five bank robberies in the span of about one month and his use of what appeared to be a handgun in three of those robberies. ECF No. 147 at 6. Further, the fact that Petitioner was motivated by financial hardship did "little to minimize the danger of [Petitioner's] actions and the lasting harm they caused." ECF No. 147 at 6.

Next, the court addressed Petitioner's longstanding history of serious and similar offenses, beginning with a grand larceny conviction in 1969 and reflecting a "distinct pattern [of] crimes of dishonesty with the objective of financial gain including forgery, credit card theft, first degree robbery, theft of a vehicle, and possession of stolen property." ECF No. 147 at 6-7. The court observed that Petitioner's instant offenses occurred less than 18 months after his most recent release from prison, where he had been serving a sentence for violating supervised release on a bank robbery conviction. ECF No. 147 at 7. Notably, in that 1999 robbery, Petitioner brandished a replica firearm, just as he did in three of his instant offenses. *See* ECF No. 72 at 20-21 ¶¶ 160, 163. His original sentence for the 1999 bank robbery was 100 months' imprisonment, and afterward, his supervised release was revoked three times between 2013 and 2014. ECF No. 72 at 20 ¶ 158. The court found Petitioner's criminal history to be "relatively

anomalous" given his upbringing in a relatively stable and caring family.  ECF No. 147 at 7.

Relatedly, Petitioner cites his intent to be released to live with his wife and daughter.  ECF No. 196 at 5-6.  Family support can weigh in a movant's favor when considering the movant's personal history and characteristics. *See, e.g., Wright*, 46 F.4th at 943.  But nothing in the record confirms his proposed release plan or demonstrates his family's support for his reentry.  To the extent that Petitioner seeks to serve the remainder of his sentence on home confinement, it is not clear whether he has a stable residence where such confinement could occur.

The court's previous denial emphasized that the requested sentence reduction would not serve the goals of sentencing in reflecting the seriousness of the offenses, providing just punishment, promoting respect for the law, and affording adequate deterrence to criminal conduct.  ECF No. 147 at 7-8.  In particular, the court concurred with the United States in that "the most extraordinary thing about this case is not [Petitioner's] health conditions, but his unwillingness to stop committing violent crime" no matter his age or the length of time he spends in custody.  ECF No. 147 at 7-8.

At the time of his first Section 3582(c)(1)(A) motion, Petitioner had served nearly 48 months in custody.  ECF No. 147 at 7.  Now, Petitioner has served approximately 80 months.  He represents that he has received a sentence reduction

through earned time credits, which moved his release date up to April 22, 2028. ECF No. 196 at 3-4.  The Court considers the goals of sentencing in light of this updated information.

The Court remains unable to conclude that a sentence reduction would serve the goals of sentencing.  Petitioner has not yet served even the 97-month sentence he recommended at the time he was originally sentenced, and which the sentencing court found insufficient.  Moreover, a sentence reduction would not provide adequate deterrence nor protect the public.  The 100-month sentence he received for the conviction preceding his instant convictions did not deter him from committing five more similar and serious offenses.  Petitioner again cites his age and medical conditions as factors that make him unlikely to recidivate.  ECF No. 182 at 10-11.  He cites the Sentencing Commission's 2017 study comparing recidivism rates by age group.  ECF No. 182 at 10-11.  That study did find that recidivism rates generally decline with age, but it noted that this trend was weakest among offenders originally sentenced for robbery offenses.  U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* at 25 fig. 19 (Dec. 7, 2017).[9]  More recent data indicates that fraud and other economic offenses make

---

[9] Available at https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders (last visited April 14, 2023).

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 40

up 46.3 percent of offenses committed by offenders 70 and older.  U.S. Sent'g

Comm'n, *Older Offenders in the Federal System* at 19 fig. 15 (July 26, 2022).[10]

Nevertheless, the data "could cut both ways" in Petitioner's case—"it is also true

that 'engaging in criminal activity at [an advanced] age provides evidence that the

defendant may be one of the few . . . who will continue to engage in criminal

activity" regardless.  *See United States v. Pacheco-Martinez*, 791 F.3d 171, 180

(1st Cir. 2015) (quoting *United States v. Johnson*, 685 F.3d 660, 662 (7th Cir.

2012)); *see also United States v. Williams*, 388 F. App'x 644, at *1 (9th Cir. 2010)

(affirming the reasonableness of a sentence, noting the defendant's "advanced age

was offset by his commission of the offense at an advanced age").  The fact that

Petitioner has completed numerous hours of prison programming and employment

is commendable but cannot outweigh his long and consistent pattern of recidivism.

### 5.  Extraordinary and Compelling Reasons

The Court could deny Petitioner's motion on the above grounds alone.  *See*

*Wright*, 46 F.4th at 945.  But the Court will address the new extraordinary and

compelling reason that was not raised in the first Section 3582(c)(1)(A) motion,

concerning Petitioner's thyroid condition.

---

[10] Available at https://www.ussc.gov/research/research-reports/older-offenders-federal-system (last visited April 14, 2023).

1    The medical records before the Court do not support his claims of

2 uncontrolled or terminal illness.  To date, only the United States has submitted any

3 of Petitioner's medical records.  ECF No. 185.  Petitioner has argued that either the

4 United States or the FCI Sheridan medical department has been "selective" in the

5 records they provide, though he does not state what records he believes they are

6 omitting.  ECF No. 186 at 2.  In support of his general allegation, he points to

7 litigation concerning the "lack of medical treatment" at FCI Sheridan, presumably

8 referring to *Young v. Salazar*, No. 20-cv-1177-SB (D. Or. dismissed Nov. 15,

9 2022), and *Young v. Hendrix*, 3:21-cv-915-AA (D. Or. dismissed June 3, 2022).

10 ECF No. 186 at 2.  Because Petitioner has cited them, the Court will reference

11 filings from these cases to the extent that they provide information specific to

12 Petitioner's current claim.  If there are problems with inmates' access to medical

13 care, it does not appear that Petitioner himself has been affected.

14    The few medical records in the record reflect that Petitioner received several

15 medical appointments across a span of six months in 2021, at a frequency

16 consistent with his physicians' recommendations.  Petitioner underwent a thyroid

17 biopsy in early April 2021 based on suspicion of "Hurthle cell neoplasm," which

18 showed a malignancy risk of 15 to 30 percent and a genetic sequencing risk of

19 "approximately 4" percent.  ECF No. 185 at 1-2.  On April 19, 2021, Petitioner

20 saw Dr. Andrew Grasley.  ECF No. 185 at 3-5.  Petitioner reportedly told Dr.

Grasley that his "biopsy showed a Hurthle cell carcinoma" in his thyroid, and Dr. Grasley discussed the prognosis of that condition with Petitioner.[11]  ECF No. 185 at 5.  Dr. Grasley did not document any independent review of Petitioner's biopsy report; indeed, the genetic sequencing component of the biopsy was not complete until the day after Petitioner saw Dr. Grasley.  *See* ECF No. 185 at 1-4.  Dr. Grasley scheduled Petitioner to see a specialist and noted only that the biopsy was "suspicious for a Hurthle cell neoplasm."  ECF No. 185 at 5.

On June 17, 2021, Petitioner submitted a habeas petition to the District of Oregon, citing concern after his May 2021 thyroid specialist appointment was canceled because an inmate contracted COVID-19.  Petition, *Young v. Hendrix*, No. 21-cv-915 (D. Or. filed June 17, 2021), ECF No. 1.  With that filing, Petitioner submitted a request he made to FCI Sheridan staff for the name of the cancer discussed in his April 19, 2021, visit with Dr. Grasley.  *Id.* at 7.  A registered nurse named Pond responded that it was "Hurthle cell carcinoma" and gave Petitioner a Mayo Clinic handout on Hurthle cell cancer.  *Id.* at 3, 7-9.

---

[11] Petitioner recounts this visit differently: "On April 19, 2021, Defendant was told by primary care physician, Dr. Grasley, [that] Defendant had thyroid cancer, call[ed] Hurthle cell carcinoma, a rare and aggressive cancer."  ECF No. 188 at 5.

Per Dr. Grasley's referral, Petitioner saw the specialist, Dr. Phil Zald, on June 29, 2021. ECF No. 185 at 6-8. Petitioner reportedly told Dr. Zald that "he is under the impression he has a known thyroid cancer at this point." ECF No. 185 at 6. But Dr. Zald concluded the "aggregate . . . findings to date are not particularly concerning for thyroid cancer" and advised Petitioner to follow up in six months for a repeat ultrasound. ECF No. 185 at 8.

On July 1, 2021, Petitioner submitted a *pro se* motion to dismiss his habeas petition, stating that Dr. Zald's "treatment plan is unreasonable and medically unsound" but that "this is not an issue for this court at this time." Motion to Dismiss, *Young v. Hendrix*, No. 21-cv-915 (D. Or. July 7, 2021), ECF No. 6. The court denied this motion and stayed the action pending a status report. Order, *Young v. Hendrix*, No. 21-cv-915 (D. Or. Sept. 13, 2021), ECF No. 7.

The follow-up with Dr. Zald occurred on October 4, 2021. ECF No. 185 at 11-16. Petitioner again reported "he was under the impression the thyroid nodule was a Hurthle cell cancer [and] has been worrying about that quite a bit." ECF No. 185 at 12-13. The repeat ultrasound showed "[n]o significant interval change" from a November 2020 thyroid ultrasound, and a repeat biopsy yielded the same 15 to 30 percent malignancy risk. ECF No. 185 at 13-14. Dr. Zald concluded that the aggregate test findings were "supportive of a benign nodule, likely Hurthle cell adenoma" and recommended a repeat ultrasound in three to five years "given the

ORDER DENYING 28 U.S.C. § 2255 AND 18 U.S.C. § 3582(c)(1)(A) MOTIONS - 44

stability of findings and prior reassuring cytology and genetic classifier."  ECF No. 185 at 16.  Dr. Zald discussed this plan with Petitioner, and both agreed to the three-to-five-year timeframe for further monitoring.  ECF No. 185 at 16. Nevertheless, Dr. Grasley requested a six-month follow-up appointment and ultrasound for Petitioner to be scheduled in April 2022.  ECF No. 185 at 17.

Petitioner saw a cardiologist, Dr. Eugene Spear, on October 26, 2021, to follow up from his June 21, 2021, appointment.  ECF No. 185 at 18-21.  Petitioner reported that recent medication changes had worked well for his cardiac symptoms, and Dr. Spear recommended continuing the current regimen and following up in six months.  ECF No 185 at 19-20.  Petitioner mentioned to Dr. Spear that his "big concern" was being told that "the cancer they found in [his] thyroid is to be observed and not to worry for a year.  He does not understand why they wait if it is a bad tumor.  Had an ENT visit and told no further test for now." ECF No. 185 at 20.

Between April and October 2021, Petitioner received a total of two specialist appointments with Dr. Zald concerning his thyroid, two biopsies, one ultrasound, one primary care appointment, and two cardiology appointments.  ECF No. 194. More recently, Petitioner reports that he saw Dr. Spear again on May 18, 2022, on par with Dr. Spear's six-month follow-up recommendation in October 2021.  ECF No. 194 at 4; ECF No. 185 at 20.  According to Petitioner, his physicians requested

approval of follow-up testing and consultations with Dr. Spear, Dr. Zald, and

pulmonology in late May; these requests were approved in June 2022 but had yet

to be scheduled as of Petitioner's July 18, 2022, filing.  ECF No. 194 at 5-6.  He

provides no further updates on his medical status in his latest filing.  ECF No. 196.

The court notes that on June 1, 2022, his appointed counsel filed a motion to

dismiss the petition in the District of Oregon, stating "On May 31, 2022,

undersigned counsel spoke with Petitioner Young by telephone.  Mr. Young

informed counsel that he saw the doctor about his health concerns and medical

issues.  Given that Mr. Young's medical issues are being addressed, he agrees to

voluntarily dismiss this action."  Motion to Dismiss, *Young v. Hendrix*, No. 21-cv-

915, ECF No. 16.  The Court dismissed the action.  Order and Judgment, *Young v.*

*Hendrix*, No. 21-cv-915, ECF Nos. 17-18.

Petitioner's medical conditions and treatment to date do not amount to

extraordinary and compelling reasons for a sentence reduction.  Petitioner is

clearly anxious about his thyroid condition, which is an understandable reaction

when the possibility of cancer arises.  Those fears were likely worsened by his

exchange with prison staff in April 2021, where he was given general information

on a condition he had not yet been diagnosed with.  But at his later, specialist

appointments, Dr. Zald confirmed that Petitioner's thyroid growth was most likely

benign and only needed periodic monitoring, which Petitioner appears to be

receiving.  The remainder of Petitioner's health conditions appear similarly well controlled and monitored.  *See, e.g.,* ECF No. 185 at 18-20 (reflecting positive results from Petitioner's cardiology treatment).

### C. Motion to Appoint Counsel

Petitioner has moved for appointment of counsel on both of his instant motions.  ECF Nos. 168, 196.  In his motion for appointment of counsel on his Section 3582(c)(1)(A) motion, he acknowledged that appointment of counsel would be moot if the Court is prepared to make a decision on his motions under Sections 2255 and 3582(c)(1)(A).  ECF No. 196 at 7.  The Court agrees that these motions are now moot given the extensive briefing to date and its denial of the other two pending motions without hearing.

**IT IS ORDERED:**

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255, **ECF No. 167**, is **DENIED**.

2. Petitioner's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A), **ECF No. 182**, is **DENIED**.

3. Petitioner's Motions for Appointment of Counsel, **ECF Nos. 168, 196**, are **DENIED AS MOOT**.

4. Petition's Motion to Compel Judgment Pursuant to Federal Rule of Civil Procedure Rule 12(c), **ECF No. 198**, is **DENIED AS MOOT**.

1    **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order

2   and provide copies to the United States and Petitioner.

3       DATED April 17, 2023.

4                           *s/Mary K. Dimke*
                           MARY K. DIMKE
5                 UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20